UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

ASHLAND GLOBAL HOLDINGS INC.,    :

        Plaintiff,    :    1:18-cv-11236

-against-    :    **COMPLAINT**

VALVOLINE INC.,    :

        Defendant.    :
_____

Plaintiff Ashland Global Holdings Inc. ("Ashland"), through its attorneys McCarter & English, LLP, brings this Complaint against its former subsidiary Valvoline Inc. ("Valvoline").

## INTRODUCTION

1. Valvoline has owed to Ashland, since September 2016, approximately $5.6 million, excluding costs and interest. Valvoline's debt to Ashland arises from a simple, and undisputed, computational error in the transfer of certain pension plan liabilities and assets in the course of Valvoline's separation from Ashland. Valvoline has inexplicably and inexcusably refused Ashland's repeated demands for payment since the end of 2017.

2. Ashland and Valvoline specifically agreed, as part of their separation, to divide certain assets and liabilities, including pension obligations owed to hourly workers at a Hopewell, Virginia chemical plant operated by one of Ashland's retained subsidiaries. Although the plan in which these employees participated was transferring to Valvoline, it was agreed that Ashland would retain the Hopewell pension liabilities and corresponding assets, but Valvoline refused to

ME1 28385173v.1

transfer to Ashland the full assets associated with these liabilities. No principle of law or equity allows Valvoline to continue enriching itself by withholding improperly Ashland's money.

## JURISDICTION

3. Ashland is incorporated in Delaware and maintains its principal place of business at 50 E. RiverCenter Blvd., Covington, Kentucky.

4. Valvoline is incorporated in Kentucky and maintains its principal place of business at 100 Valvoline Way, Lexington, Kentucky.

5. The amount in controversy exceeds $75,000, and this Court possesses jurisdiction over this action in accordance with 28 U.S.C. §1332(a)(1). Venue properly lies in this Court pursuant to the forum selection provision in the parties' contract.

## FACTS

6. Ashland and its predecessors trace their origins to the formation of Ashland Oil Corporation in 1936. Ashland has acquired and divested a number of subsidiaries engaged in a variety of business lines over the years, including Valvoline.

7. Ashland, through these transactions, has transformed itself into a premier global specialty chemicals company, serving customers in a wide range of consumer and industrial markets ("Ashland Business"). The Ashland Business includes adhesives, architectural coatings, automotive, construction, energy, food and beverage, personal care, and pharmaceutical.

8. Ashland acquired the Valvoline business in 1950. Ashland thereafter operated Valvoline as a business segment or subsidiary for more than sixty-five (65) years.

9. Defendant Valvoline remains a leading global producer, distributor, and marketer of high quality lubricants and specialized automotive, commercial, and industrial solutions ("Valvoline Business"). Valvoline also operates and franchises hundreds of Valvoline Instant Oil Change service centers throughout the United States.

10. On September 22, 2015, Ashland's Board of Directors resolved to separate Ashland and Valvoline into two independent, publicly traded companies through a tax-free spin-off transaction.

11. The parties implemented the separation of the Ashland Business and the Valvoline Business through a September 22, 2016 "Separation Agreement". The Separation Agreement governed both the parties' actions taken in connection with the separation and the parties' obligations following their separation.

12. To accomplish their separation goals, the parties worked together to review and assign assets and liabilities to Ashland or Valvoline. This identification and allocation process included the transfer of employee pension plan liabilities and assets, and the parties memorialized such transfer in an "Employee Matters Agreement," also dated September 22, 2016.

13. The parties allocated the bulk of their United States pension obligations and assets to Valvoline. Ashland, however, retained the pension liabilities for the hourly employees at its Hopewell plant and moved those employees into a smaller pension plan that was remaining with Ashland following the separation.

14. Ashland and Valvoline further agreed that the assets associated with the pension liabilities for the hourly employees at the Hopewell plant would be transferred back to Ashland.

15. The parties undertook a census of the Hopewell pension participants and calculated the corresponding assets needed for the agreed upon transfer.

16. Following Valvoline's separation, Ashland discovered that due to human error, the parties mistakenly omitted from the Hopewell census thirteen (13) employees. This error

resulted in a shortfall in the amount of the pension assets transferred to Ashland for the Hopewell employees' pension liabilities.

17. Assets in the amount of $33,642,589 should have been transferred to Ashland. However, only $28,056,780 was transferred, resulting in a shortfall of $5,589,809.

18. Ashland has repeatedly demanded since the end of 2017, that Valvoline honor its obligations and transfer to Ashland the $5,589,809 it owes. Valvoline has refused to do so without justification in contravention of Sections 6.01(b) and (c) of the Employee Matters Agreement.

19. Valvoline's obligation to reimburse Ashland is also contained within Section 2.01 of the Separation Agreement.

20. Section 2.01(c) of the Separation Agreement requires the parties to correct any error associated with a required transfer of assets or liabilities arising from their separation. Section 2.01(c) further requires the party failing to transfer an asset, here Valvoline, to "reimburse the other Party for any costs directly related to retaining or maintaining such Asset. . . ."

21. The application of Section 2.01(c) and its mandate for the correction of certain omissions cannot be disputed. It clearly stated the parties were required to fix errors that existed in those situations where "had the Parties given specific consideration to" the subject of the omission, the asset or liability would have been "transferred, conveyed, accepted or assumed, as the case may be".

22. There can be no good faith challenge by Valvoline to the fact the transfer obligation associated with the Hopewell pension plan was specifically considered by the parties and thus covered by Section 2.01(c).

23. Moreover, Section 2.01(c) mandated the correction of certain omissions in the situation where other than due to the absence of "accurate or complete knowledge regarding the use, nature or basis of, such Asset or Liability….", the asset or liability would have been "transferred, conveyed, accepted or assumed, as the case may be". The lack of accurate or complete knowledge was the cause of the shortfall giving rise to this dispute and Valvoline's failure to transfer the $5.6 million to Ashland.

24. All of the conditions and requirements of Section 2.01(c) for Valvoline to transfer the approximately $5.6 million exist, however, Valvoline has refused to do so.

25. Section 2.01(e) of the Separation Agreement further confirms Valvoline's obligation to transfer the remaining $5.6 million to Ashland. Section 2.01(e) provides that "[t]o the extent that any transfer or conveyance of any Asset . . . required by this Agreement to be so transferred. . . shall not have been completed prior to the Separation, the Parties shall use reasonable best efforts to effect such transfer . . . as promptly following the Separation as shall be practicable."

26. Valvoline does not dispute the correct number of Hopewell pension participants, the correct amount of pension assets associated with those participants, the existence of the parties' census error, or the fact that Valvoline transferred to Ashland the incorrect amount of pension assets.

27. Valvoline simply refuses, without justification, to honor its contractual obligation to transfer to Ashland the sum of $5,589,809.

28. Ashland repeatedly has demanded, since the end of 2017, that Valvoline honor its contractual obligations and transfer to Ashland the sum of $5,589,809. Valvoline, by refusing

wrongfully to pay its debt, unjustly enriches itself to the tune of $5.6 million, and deprives Ashland of its rightful use of these monies, for which interest continues running.

## COUNT I
### (Breach of Contract)

29.　Plaintiff restates and repeats the prior allegations of the Complaint and incorporates them by reference.

30.　Ashland and Valvoline entered into the Separation Agreement and the Employee Matters Agreement.

31.　The parties' contracts required Valvoline to transfer, at the time of the September 2016 separation, the sum of $5,589,809 in connection with the Hopewell pension liabilities retained by Ashland.

32.　Valvoline failed, and still refuses, to comply with its contractual obligations.

33.　Ashland has suffered, and continues to suffer, damages as a direct and proximate result of Valvoline's contract breaches.

WHEREFORE, Ashland seeks the entry of judgment against Valvoline as follows:

(a)　awarding compensatory and consequential damages in an amount to be established at trial, together with contractual costs, prejudgment interest, postjudgment interest, reasonable attorneys' fees, and costs of suit, and

(b)　such other relief as the Court deems just and equitable.

ME1 28385173v.1

## COUNT II
### (Declaratory Judgment)

34. Plaintiff restates and repeats the prior allegations of the Complaint and incorporates them by reference.

35. Ashland and Valvoline entered into the Separation Agreement and the Employee Matters Agreement.

36. An actual controversy currently exists between the parties regarding Valvoline's failure to honor its contractual obligations to transfer to Ashland the sum of $5,589,809, plus costs and interest, in connection with the Hopewell pension liabilities retained by Ashland.

37. The Court's resolution of this issue will (a) serve a useful purpose in clarifying and settling the legal relations between the parties, and (b) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

38. The Declaratory Judgment Act, 28 U.S.C. §2201(a), applies to the present controversy, and this Court should apply same.

WHEREFORE, Ashland seeks the entry of judgment against Valvoline, pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201(a), declaring:

(a) Valvoline breached the parties' Separation Agreement and the Employee Matters Agreement by failing to transfer to Ashland, in September 2016, the sum of $5,589,809 in connection with Ashland's retention of the Hopewell pension liabilities,

(b) Valvoline must pay compensatory and consequential damages in an amount to be established at trial, together with contractual costs, prejudgment interest, postjudgment interest, reasonable attorneys' fees, and costs of suit, and

- 8 -

    (c)    Valvoline must transfer to Ashland the sum of $5,589,809, plus costs and interest, in connection with Ashland's retention of the Hopewell pension liabilities, together with such other relief as the Court deems just and equitable.

Dated: December 3, 2018

        McCARTER & ENGLISH, LLP

        s/ William D. Wallach
        William D. Wallach  WW2083
        Worldwide Plaza
        825 Eighth Avenue, 31st Floor
        New York, NY 10019
        (212) 609-6800
        wwallach@mccarter.com

        Attorneys for Plaintiff
        Ashland Global Holdings Inc.